ESTATE OF NELLIE M. LEWIS, JOE W. LEWIS, PERSONAL REPRESENTATIVE, AND JOE W. LEWIS, INDIVIDUALLY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Lewis v. Commissioner
Docket No. 9393-78.
United States Tax Court
T.C. Memo 1980-106; 1980 Tax Ct. Memo LEXIS 480; 40 T.C.M. (CCH) 78; T.C.M. (RIA) 80106; April 2, 1980, Filed *480 Held: The provisions of the Tax Reform Act of 1976 retroactively increasing the minimum tax are not unconstitutional. Buttke v. Commissioner, 72 T.C. 677 (1979), on appeal (CA8 Oct. 15, 1979), followed. Jane R. Matyastik, for the petitioners. Gary A. Benford and Linda L. Wong, for the respondent. CHABOT
MEMORANDUM *484 OPINION CHABOT, Judge: Respondent determined a deficiency in Federal individual income tax against petitioners for 1976 in the amount of $1,097.27. The issue for decision is the constitutionality of the minimum tax for tax preferences under section 56 [1] as applied to a 1976 transaction which took place before the enactment of the Tax Reform Act of 1976. All of the facts have been stipulated; the stipulation and stipulated exhibits are incorporated herein by this reference.
When the petition in this case was filed, petitioners resided in Waco, Texas. In 1976, petitioner Joe W. Lewis (hereinafter sometimes referred to as "Joe") was married to Nellie M. Lewis (hereinafter referred to as "Nellie"). [2] Joe and Nellie filed a joint Federal income tax return for 1976. On May 28, 1976, Joe and Nellie sold their personal residence and two adjoining lots for $56,000. The sale price of $56,000 was divided $18,666.67 *485 to the personal residence and $37,333.33 to the two adjoining lots. The sale of the principal residence resulted in long-term capital gain of $17,583.50. Respondent does not dispute the exclusion of all the gain on the sale of the principal residence. The sale of the two adjoining lots resulted in long-term capital gain of $34,630.23.Joe and Nellie deducted $17,315.12 of this gain from income in computing their tax under section 1. Respondent does not dispute this deduction for section 1 tax purposes. Respondent contends that the deducted portion of the longterm capital gain on the sale of the adjoining lots is subject to the minimum tax for tax preferences. Petitioners do not dispute that this deducted amount is a tax preference. [3] However, they contend that it is unconstitutional to apply to the gain realized on May 28, 1976, the increased minimum tax rate and decreased minimum tax deductions provisions enacted on October 4, 1976. Respondent maintains that the application of the minimum tax in accordance with the notice of deficiency is constitutional, relying on our opinion in Buttke v. Commissioner, 72 T.C. 677 (1979), on appeal (CA8 Oct. 15, 1979). *486 We agree with respondent. The minimum tax was first enacted by section 301 of the Tax Reform Act of 1969 (Pub. L. 91-172, 83 Stat. 580) as sections 56, 57, and 58. The minimum tax was generally equal to 10 percent of the amount by which the sum of the items of tax preference (as defined in section 57) exceeded the sum of $30,000 and the "regular" tax. These provisions did not long survive unchanged. Amendments of varying degrees of significance were *487 made by section 501 of the Excise, Estate, and Gift Tax Adjustment Act of 1970 (Pub. L. 91-614, 84 Stat. 1846), sections 601(c)(4) and (5) of the Revenue Act of 1971 (Pub. L. 92-178, 85 Stat. 558), sections 2001(g)(2), 2002(g)(4), and 2005(c)(7) of the Employee Retirement Income Security Act of 1974 (Pub. L. 93-406, 88 Stat. 957, 968, 991), and section 203(b) of the Tax Reduction Act of 1975 (Pub. L. 94-12, 89 Stat. 30). The amendments giving rise to the controversy herein were enacted on October 4, 1976, by section 301 of the Tax Reform Act of 1976 (Pub. L. 94-455, 90 Stat. 1549). These amendments increased the tax rate to 15 percent and reduced the deduction to the greater of $10,000 or one-half of the "regular" tax. [4] Section 301(g)(1) of the 1976 Act (90 Stat. 1553) provided that (except with respect to certain financial institutions) the amendments of the minimum tax provisions "shall apply to items of tax preference for taxable years beginning after December 31, 1975". *488 Petitioners contend that retroactive application of the 1976 Act amendments to the minimum tax provisions in the instant case "is 'harsh and oppressive' and 'transgresses constitutional limitation.'" In their petition, petitioners assert that this is a taking of property without due process of law, in violation of the Fifth Amendment [5] to the United States Constitution. We examined into the constitutionality of the retroactive application of the same 1976 Act amendments in Buttke, focussing on the Fifth Amendment (72 T.C. at 678-679), and there held that such an application *489 is constitutional.No reason has been presented herein for departing from this holding and we find none. For the reasons set forth in Buttke, we hold that it is constitutional to apply these 1976 Act amendments to the gains realized on May 28, 1976. Petitioners seek to distinguish Buttke by arguing that the taxpayers therein would have been subject to a minimum tax even if the 1976 Act amendments had not been made retroactive, whereas in the absence of a retroactive application of those amendments petitioners would not be subject to any minimum tax. We do not think this difference is a valid basis for distinction. We noted in Buttke (72 T.C. at 680) that-- The taxes in Welch v. Henry [305 U.S. 134 (1938)] and First National Bank in Dallas v. United States [190 Ct. Cl. 400, 420 F.2d 725 (1970)] were "newer" than the 1976 minimum tax, but even those were not constitutionally invalid. * * * In both Welch v. Henry and First National Bank in Dallas v. United States no tax would have been owing had the statute not been enacted. Petitioners assert that it is "discrimination" to impose a minimum tax of $1,097.27 *490 on otherwise nontaxable gains of $17,315.12, while imposing in Buttke a minimum tax of $11,607 on $87,380 of otherwise nontaxable gains. Concerns of that sort are the province of the Congress, not this Court, unless some constitutional infirmity is asserted. Petitioners appear to make no constitutional argument on this point and we see no basis for one. See, e.g., Bryant v. Commissioner, 72 T.C. 757, 763-764 (1979), and cases cited therein. Petitioners point out that "Congress recognized the inequity of the 1976 Act and corrected the treatment of minimum tax in subsequent years." Section 421 of the Revenue Act of 1978 (Pub. L. 95-600, 92 Stat. 2871) made several significant changes in the application of the minimum tax. When taken together with the changes made by section 402 of the 1978 Act (92 Stat. 2867), it appears that tax relief was afforded to people in circumstances similar to those that faced Joe and Nellie. However, the 1978 Act provisions were essentially prospective; they were not made retroactive to 1976. We have no authority to apply the 1978 Act amendments with retroactivity that the Congress did not choose to provide. Bryant v. Commissioner, 72 T.C. at 766; *491 Buttke v. Commissioner, 72 T.C. at 680-681. Decision will be entered for the respondent. Footnotes
1. Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954 as in effect for the taxable year in issue.↩
2. Nellie did on April 29, 1978, and thereafter her estate became a petitioner in the instant case.↩
3. SEC. 57. ITEMS OF TAX PREFERENCE. (a) In General.--For purposes of this part, the items of tax preference are-- * * *
(9) Capital gains.-- (A) Individuals.--In the case of a taxpayer other than a corporation, an amount equal to one-half of the amount by which the net long-term capital gain exceeds the net short-term capital loss for the taxable year. [The subsequent amendments of this provision by sec. 1901(b)(33)(A) of the Tax Reform Act of 1976 (Pub. L. 94-455, 90 Stat. 1800) and sec. 402(b)(1) of the Revenue Act of 1978 (Pub. L. 95-600, 92 Stat. 2868), and impliedly by secs. 421(b)(1) and 421(b)(2) of the Revenue Act of 1978 (Pub. L. 95-600, 92 Stat. 2874), do not affect the taxable year before us.]↩
4. SEC. 56. IMPOSITION OF TAX. (a) General Rule.--In addition to the other taxes imposed by this chapter, there is hereby imposed for each taxable year, with respect to the income of every person, a tax equal to 15 percent of the amount by which the sum of the items of tax preference exceeds the greater of-- (1) $10,000, or (2) the regular tax deduction for the taxable year (as determined under subsection (c)). * * *
(c) Regular Tax Deduction Defined.--For purposes of this section, the term "regular tax deduction" means an amount equal to one-half of (or in the case of a corporation, an amount equal to) the taxes imposed by this chapter for the taxable year (computed without regard to this part and without regard to the taxes imposed by sections 72(m)(5)(B), 402(e), 408(f), 531, and 541), reduced by the sum of the credits allowable under-- (1) section 33 (relating to foreign tax credit), (2) section 37 (relating to credit for the elderly), (3) section 38 (relating to investment credit), (4) section 40 (relating to expenses of work incentive program), (5) section 41 (relating to contributions to candidates for public office), (6) section 42 (relating to general tax credit), (7) section 44 (relating to purchase of new principal residence), and (8) section 44A (relating to expenses for household and dependent care services necessary for gainful employment). [The subsequent amendments of subsection (c) by section 202(d)(2)(A) of the Tax Reduction and Simplification Act of 1977 (Pub. L. 95-30, 91 Stat. 148), section 141(d) of the Revenue Act of 1978 (Pub. L. 95-600, 92 Stat. 2794), and section 101(b)(2) of the Energy Tax Act of 1978 (Pub. L. 95-618, 92 Stat. 3179), and impliedly by section 421(a) of the Revenue Act of 1978 (Pub. L. 95-600, 92 Stat. 2871), do not affect the taxable year before us.]↩
5. No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.↩