**Sue FEIN, Personal Representative of the Estate of Richard Fein, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 83–1868.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 10, 1984.

Decided April 3, 1984.

Rehearing and Rehearing En Banc Denied May 3, 1984.

Selner, Glaser & Komen, P.C., A. Fuller Glaser, Jr., St. Louis, Mo., for appellant.

Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Richard Farber, Joan I. Oppenheimer, Tax Div., Dept. of Justice, Washington, D.C., for appellee; Thomas E. Dittmeier, U.S. Atty., St. Louis, Mo., of counsel.

Before ROSS and ARNOLD, Circuit Judges, and HARRIS,* Senior District Judge.

---

* The Hon. Oren Harris, Senior United States District Judge for the Eastern and Western District

ARNOLD, Circuit Judge.

In 1977, Richard Fein gave an insurance policy on his own life to his wife. He died about three months later. The Internal Revenue Service applied a provision of the Revenue Act of 1978 to this gift and included the proceeds of the policy in Mr. Fein's estate for tax purposes. The issue in this case is the constitutionality of this retroactive application of the 1978 Act to the 1977 transfer. The District Court[1] 565 F.Supp. 41 found this application constitutional. We affirm.

## I.

On January 4, 1977, the decedent took out a policy on his own life. He gave the policy to his wife, effective March 22, 1977. The parties agree that at the time of the transfer the policy was worth less than $3,000. Further, the parties agree that at that time the transfer would have been effective to remove the policy and its proceeds from the donor's estate. Section 2035(b)(2) of the Internal Revenue Code of 1954, 26 U.S.C. § 2035(b)(2), as it was written at the time, excluded all transfers of less than $3,000 in value from a decedent's gross estate.[2]

Mr. Fein died on June 13, 1977. Following his death, on November 6, 1978, the Revenue Act of 1978 became law. Among other things, it took life-insurance policies out of § 2035(b)(2) altogether.[3] The new law also provided that it would be effective with respect to transfers made after January 1, 1977, by decedents dying after December 31, 1976. Revenue Act of 1978, Pub.L. No. 95–600, § 702(f)(2), 92 Stat. 2763, 2930. Thus, if the 1978 amendments

apply, the proceeds of the decedent's life-insurance policy are includible in his estate.

## II.

There is nothing unusual about retroactive tax laws. "Congress almost without exception has given each such statute an effective date prior to the date of actual enactment.... Usually the 'retroactive' feature has application only to that portion of the current calendar year preceding the date of enactment, but each of the Revenue Acts of 1918 and 1926 was applicable to an entire calendar year that had expired preceding enactment." *United States v. Darusmont*, 449 U.S. 292, 296, 101 S.Ct. 549, 551–52, 66 L.Ed.2d 513 (1981) (per curiam). Most such retroactive enactments have been upheld as against due-process challenges, on the theory that some limited retroactivity is necessary as a practical matter to prevent the revenue loss that would result if taxpayers, aware of a likely impending change in the law, were permitted to order their affairs freely to avoid the effect of the change.

 The retroactive application of a tax statute may still, in a given case, be so unreasonable as to amount to a deprivation of property without due process of law. In determining whether a tax meets this threshold, the Supreme Court has looked to two main considerations: whether the change in the tax law was reasonably foreseeable, see *Darusmont, supra*, 449 U.S. at 299, 101 S.Ct. at 553 (assuming arguendo relevance of foreseeability of tax change); *Welch v. Henry*, 305 U.S. 134, 147, 59 S.Ct. 121, 125–26, 83 L.Ed. 87 (1938); *Milliken v. United States*, 283 U.S.

of Arkansas, sitting by designation.

1. The Hon. William L. Hungate, United States District Judge for the Eastern District of Missouri.

2. Before the enactment of the Tax Reform Act of 1976, gifts made within three years of death were rebuttably presumed to be in contemplation of death, and transfers in contemplation of death were ineffective to reduce the gross estate. In 1976 Congress changed the law, so that all transfers within three years of death

were *ipso facto* included in the estate without regard to the decedent's state of mind, with certain exceptions. Tax Reform Act of 1976, Pub.L. No. 94–455, § 2001(a)(5), 90 Stat. 1520, 1848. One of the exceptions, § 2035(b)(2), was for "any gift excludable in computing taxable gifts by reason of ... $3,000 annual exclusion ...."

3. The amended version of § 2035(b) states:
 Paragraph (2) shall not apply to any transfer with respect to a life insurance policy.

15, 23–24, 51 S.Ct. 324, 327–28, 75 L.Ed. 809 (1931); *Untermyer v. Anderson*, 276 U.S. 440, 445–46, 48 S.Ct. 353, 354, 72 L.Ed. 645 (1928); *Buttke v. Commissioner*, 625 F.2d 202, 203 (8th Cir.1980) (per curiam) (taxpayer should have "anticipated" tax change), *cert. denied*, 450 U.S. 982, 101 S.Ct. 1517, 67 L.Ed.2d 817 (1981); and whether the change was only a change in tax rate or the imposition of a new tax, see *Darusmont, supra*, 449 U.S. at 300, 101 S.Ct. at 553–54; *Milliken, supra*, 283 U.S. at 23–24, 51 S.Ct. at 327–28; *Estate of Ceppi v. Commissioner*, 698 F.2d 17, 21 (1st Cir.), *cert. denied*, — U.S. —, 103 S.Ct. 3088, 77 L.Ed.2d 1350 (1983). The latter consideration is grounded on the former, in that a change in the tax rate is considered by its very nature to be reasonably foreseeable, whereas the imposition of a new tax may not be. See *Milliken, supra*, 283 U.S. at 23–24, 51 S.Ct. at 327–28.

■■■ There is no evidence that Mr. Fein relied on or even knew about the $3,000 exclusion in the 1976 version of Section 2035(b). There is no reason to suppose that, had he known the law would later be changed, he would have kept the policy for himself, or never have bought it to begin with. The burden of showing that a law is so unfair as to violate the Due Process Clause must be on the party attacking the statute. The whole reason why retroactivity raises a question is that it may disappoint settled and reasonable expectations. No doubt Mr. Fein's beneficiaries had a nasty shock when they learned about the 1978 law. But their disappointment results from an assumption (natural enough) that the law applicable at the time of death, and at the time of the filing of the estate-tax return, would continue to be applicable. By that time all of the operative taxable events had occurred. Nothing could be done to change them. Thus, though expectations may have been disappointed, there is nothing about this case so grossly unfair as to violate the Constitution, since the decedent has not been shown to have had any relevant expectations about the estate-tax laws when he bought and later gave away the policy.

Nor is this a case of the imposition of a completely new tax. There were estate and gift taxes long before 1977. The change in the law was simply the elimination of life-insurance policies from the $3,000 exception to the general rule with respect to gifts within three years of death. This kind of tinkering, though certainly annoying to taxpayers and their advisers, is a regular feature of the tax-law landscape. Every two years, if not every year, there is some sort of Revenue Act or Technical Amendments Act, and many of them are more or less retroactive. The change of which plaintiff complains here is, we think, closer in kind and in effect to a mere increase in the tax rate than to the enactment of a wholly new tax.

In coming to this conclusion, we have been greatly aided by Judge Bailey Brown's analysis in *Estate of Ceppi, supra*. That case also involved the 1978 amendment to Section 2035(b)(2). Under the prior law, property given away within three years of death was, as we have already seen, not included in the estate if it was worth less than $3,000. In addition, gifts worth more than $3,000 were included only to the extent that their value exceeded $3,000. If property worth $30,000 was given away, only $27,000 was included in the estate. While this state of the law obtained, gifts were made and the donor died. Then the Revenue Act of 1978 was passed, and by its terms the entire value of gifts worth more than $3,000 (that is, $30,000, to use the example just given) was included in the estate. Retroactive application of this change was upheld against a due-process attack.

It is possible to distinguish *Ceppi*. There, it can be said, there was no doubt that the property given away was of a type includible in the estate; the only dispute was over the *extent* of includibility—whether for the whole value, or for the whole value less $3,000. Here, on the other hand, the new law wholly destroys the application of the $3,000 exemption to a distinct kind of property—policies of life insurance. But

we think the attempted distinction is not significant enough to make a constitutional difference. The fact remains unavoidable that the 1978 Act was far from a wholly new tax, and the modern trend of decisions has uniformly been to limit the cases on which the taxpayer here most strongly relies—*Milliken v. United States, supra,* and *Untermyer v. Anderson, supra*—to that narrow situation. See *Estate of Ceppi, supra,* 698 F.2d at 21, and our own treatment of *Untermyer* in *Buttke v. Commissioner, supra,* 625 F.2d at 203 (reading *Untermyer* to forbid "retroactive application of a wholly new tax").

*Affirmed.*